David H. Cummings and Leon E. Sutherland, Trustees of Henebery Estate, Appellees, v. Edward J. Cashin, Jr., et al., Appellants.

Gen. No. 9,971.

630

[redacted]

Opinion filed September 19, 1944.

MORGAN, PENDARVIS & MORGAN, of Peoria, for appellants.

L. E. SUTHERLAND, of Peoria, for appellees.

MR. JUSTICE HUFFMAN delivered the opinion of the court.

This suit was filed by appellees, as trustees, in two separate trusts, to terminate said trusts and for decree for distribution thereof. The beneficiaries, or parties interested, are the same in each of the trusts. The trust first in period of time is referred to as the Henebery Trust, and the trust second in period of time is referred to as the Pool Agreement Trust.

The decree is in two parts, that is, one part deals with the termination and distribution of the Henebery Trust, while the second part of the decree deals with termination and distribution of the Pool Agreement Trust.

No appeal has been taken from that part of the decree with respect to the Henebery Trust. However, for the purpose of this opinion, it may be necessary to make reference to such trust because of the fact the parties interested in the two trusts are the same, and the trustees in each instance the same.

· The duration of each of said trusts was definitely fixed at a certain number of years. The time fixed in each has expired. There appears to be no objections to the termination of the trusts.

The Henebery Trust was established in September 1928. It evidently was productive of large revenues. The beneficiaries under that trust, as individuals and in their individual capacity, made investments in southwest land mortgages. Their respective invest-

ments totaled about a quarter of a million dollars. A few of the investments were represented by real estate mortgage bonds, or mortgage notes, which were but a part of a total issue. These are referred to as ''split mortgages.''

These investments were proving unsatisfactory. The time had come when something must be done in order to protect them against loss. This situation was productive of the second named trust, referred to herein as the Pool Agreement Trust. This trust came into existence on February 1, 1934, when by written instrument the beneficiaries conveyed their farm mortgage securities to appellee trustees. The mortgages were described as being delinquent in principal, or interest, or both. The parties to the instrument state therein that it was their desire to liquidate the mortgages and convert them into cash. The trustees were given full power to rent, lease, sell, foreclose, and convey such property at whatever price they might deem proper; to make contracts and agreements of any kind or nature concerning the property, that they might deem proper; and with full power to manage and control the same in such manner as they might deem best or desirable. The trustees were also empowered to pay any expenses incurred in connection with the proposed liquidation of the mortgages and lands thereby secured, all court costs, attorneys' fees, taxes, and any other expense incurred in the handling of the property, or in the foreclosure of the mortgages. It was further provided that the trustees should keep a record with respect to each of the tracts covered by the several mortgages showing the interest, rents, proceeds of sale, and expenses incident thereto. The duration of this trust was fixed at five years.

The term Pool Agreement Trust, as applied by the parties to the instrument herein, is but a term of convenience. It is not so designated by the instrument itself. It was not a business trust for the purpose of

operating lands or land investments for profit. To use a harsh term, it was an attempt by the owners of unfortunate investments in southwest land securities to salvage therefrom as much as possible of their original investments. The sole purpose of the instrument was to liquidate such investments in whatever manner the trustees found possible. To accomplish this result they conveyed their securities to the trustees by the liquidation agreement, instead of each party pursuing their own course. The respective parties were far removed from the location of the mortgaged property. The trustees selected were, no doubt, already familiar with the investments, due to the relationship among them with respect to the Henebery Trust.

There is no question but that the trustees set about to accomplish the purpose of the trust and made every effort to achieve the object thereof. Over $108,000 were expended by them in an effort to accomplish the ends sought.

It is conceded by all parties that the purpose of the trust has failed and no objection is made to its termination, or to the acts of the trustees in their attempt to accomplish its purpose. This appeal arises solely with respect to the manner in which the court ordered distribution of the funds and property of the liquidation agreement trust, which by the parties is termed the Pool Agreement Trust.

The trustees bring this suit wherein they set up that the trust instrument by its own terms expired in 1939; that title to some of the mortgaged land has been lost because of nonpayment of taxes; that they have been unable to accomplish the purpose of the trust; and desire to be relieved of further responsibility. They ask that the court take an accounting of the receipts and disbursements with respect to each mortgaged tract, and that they be directed to convey back to the various beneficiaries their proportionate share of the

securities, farms and assets on hand, under a judicial determination.

Appellants complain that the decree for distribution of the liquidation trust agreement directs that the trustees shall return all unliquidated securities to the persons depositing same; that they shall convey all unsold farm land acquired by virtue of any mortgage security to the person depositing such security; and that cash received from the liquidation of mortgage securities, or from the sale of lands acquired thereunder, and income derived from said farms, should be distributed pro rata among the parties to the instrument in the ratio that the principal amount of the mortgage securities deposited by each bore toward the aggregate amount of all such securities deposited by the several parties; and that all parties should bear a pro rata share of the cost of acquisition of all lands acquired, and all expenses incurred, under the liquidation agreement.

Appellants object to that part of the decree which deals with the distribution of money from the liquidation of mortgage securities, or from the sale of lands acquired thereunder, or derived from lands so acquired. They also object to the provision of the decree that each party should bear a pro rata share of the cost of acquisition of lands acquired and all expenses incurred by the trustees in and about their effort to accomplish the purpose of the trust.

Among the securities deposited by several of the parties were what is called "split mortgage" securities. These were either mortgage notes or real estate mortgage bonds, issued under a trust deed. In some instances, the trustees proceeded to acquire the balance of the outstanding mortgage securities in order that they might control the situation and bring the title to the securities or to the land mortgaged, into the beneficiary holding such split mortgage notes. In the doing of this, the trustees enhanced the value of such bene-

ficiary's interest in the mortgaged premises. For instance, it appears that one of the beneficiaries deposited a $600 bond of a total mortgage bond issue of $3,100. The trustees acquired title to all of the mortgaged premises at a cost of $1,190.42. It would appear that the transactions of this character enabled the trustees to acquire outstanding securities at a greatly reduced price from the face value thereof. Appellants urge that it would be unfair and inequitable to divide the proceeds from securities that were liquidated, or from sale of lands acquired thereunder, among the several parties in the proportion their deposit bore toward the aggregate, because those parties whose securities or lands were liquidated have no further interest left, and if the proceeds from their securities should be divided among all of the parties in a pro rata distribution, those persons whose securities were unliquidated, or whose lands were unsold, would receive the same back, and in addition thereto a pro rata share from the securities and lands sold. They urge that such distribution would result in the beneficiary whose securities and lands were liquidated, contributing therefrom to the other beneficiaries their pro rata share, while those whose securities or lands were not liquidated would receive the same back in full as deposited. Appellants further urge the proposed distribution would cause those whose securities and lands were liquidated to suffer an unjust burden by forcing the proceeds from the sale of their securities and lands to bear a portion of the cost and expense incident to acquiring the outstanding mortgage indebtedness on lands upon which some of the parties held split mortgages.

Briefly stated, appellants object to the unliquidated securities and unsold lands being returned in full to the beneficiaries depositing same, and at the same time permitting such beneficiaries to share pro rata in the proceeds from the sale of securities and lands

which were liquidated. Also in this respect is the situation of the split mortgage securities which were increased to the full extent of the mortgage indebtedness.

It appears the trial court undertook to bring about a distribution of the property and funds of this liquidation trust agreement in a manner which would have been in accordance with the purpose and design of the parties, had the trust not failed of accomplishment. Therefore, the decree directing distribution is founded upon a percentage or pro rata basis, with each party sharing in the expenses in connection with the trust and participating in a distribution of money on hand, proportionately as the principal amount of their deposit bore toward the aggregate. We have already noted appellants' objections to this method of distribution and of satisfying the expenses incurred by the trustees in their attempt to execute the trust.

It appears that only approximately 20 per cent of the securities were liquidated. The difficulty here is that to permit 80 per cent of the security holders to participate pro rata in a 20 per cent liquidation would dissipate such fund to the irreparable injury of those whose securities were liquidated. Such a situation would result in those whose securities were not liquidated, or lands acquired not sold, sharing pro rata in the proceeds from the securities liquidated and at the same time receiving back from the trustees the securities deposited by them, or lands acquired thereunder.

Prior to the execution of the trust instrument, there was no community of property rights among the parties. They each owned individually their respective mortgage securities. The sole purpose and object in creating the liquidation trust was that the parties thereto might liquidate their respective securities through one agency and as expeditiously as possible. The instrument clearly indicates that the parties thereto anticipated and intended that all of the mort-

gage securities would be liquidated, in which event they expected to bear their proportionate or pro rata part of the costs incident thereto. It is apparent from a reading of the instrument that they did not contemplate such a condition or situation as we now find. Since the trust has failed, it must necessarily be considered that the intent and purpose thereof, as contemplated by the parties creating the same, has likewise failed. And since the time fixed by the trust for its duration has long since expired, it appears an emergency exists in regard to such trust instrument. The trustees have instituted this suit to terminate the same, and in order to be relieved of questions that might arise among the parties, ask the court to determine by decree how the securities, lands and money shall be distributed.

Equity is now faced with the problem of allotting the interest to each respective party in a manner which will save for them, so far as possible, the benefits to which they are entitled by virtue of the security they originally deposited. This is not an easy task, and as above stated, is not one that was contemplated by the parties creating the trust.

The object of the trust has so completely failed of accomplishment that it is impossible to give expression thereto in accordance with the purpose and intent of the parties creating the instrument. Neither is it possible to make a distribution as contemplated by the parties. Therefore, we are compelled to face a situation of a distribution of the property due to failure of accomplishment and not under circumstances contemplated by the parties or provided for by the trust instrument.

The only other basis than that used by the trial court, this court can perceive whereby distribution may be had, is one where each of the parties shall be placed in status quo as nearly as circumstances will permit. The interests of the parties were vested at the time of

the creation of the trust instrument. The securities deposited were the individual property of the several parties, represented by investment of their own respective funds. Since the object of the trust has failed of accomplishment, by the very nature of things, the securities on hands must be returned to the persons depositing them. However, with respect to a small portion of such securities, we find the trustees were successful in liquidating same.

The decree directs that the master shall take an accounting with respect to receipts and disbursements of the trustees under the liquidation agreement. The evidence shows the trustees maintained a complete and accurate record of all expenses and receipts in connection with each security deposited and with the land thereunder pledged. Thus we find the trustees have available accurate accounts with respect to the above items.

As above indicated, it is the opinion of the court that the distribution of the property of this trust should be had with a consideration in mind of endeavoring to place each of the parties in the position they were at the time of the making of the instrument, so far as possible. The object of the trust has so wholly failed that it is impossible to carry out the purpose and intent of the parties as expressed therein. Therefore, we have reached the conclusion that instead of the distribution being made upon a pro rata basis, which was the ultimate object under the instrument itself, that each of them shall receive his security or the lands acquired thereunder, or the proceeds resulting from liquidation thereof. This will mean that each person whose mortgage security is unliquidated will have the same returned; that any person under whose mortgage security land was acquired and unsold, will receive conveyance for such land; that those whose securities were liquidated either in kind or by the sale of land acquired thereunder, shall receive the pro-

ceeds therefrom; that those who held split mortgages which were enhanced in value by the trustees acquiring the balance of the outstanding mortgage indebtedness, shall receive such mortgage security, the lands acquired thereunder, or the proceeds from the sale thereof; and that each of the parties shall be charged with the costs and expenses that have been entailed in connection with their respective securities and the premises upon which they were a lien. Each person should be credited with any rents or issues from his land, or from the sale of any land acquired by virtue of his security. Briefly, this will mean that each person to the instrument shall be charged and credited with expenses and receipts in connection with his or her securities upon the same basis and in the same manner as if the parties had each pursued their own individual course in an effort to liquidate their securities. Under such circumstances, had they made the effort the trustees have made for them, and failed, as has occurred here, they would have naturally incurred whatever expenses arose in connection with such effort. Had a few of the individuals been successful in liquidating their securities, they would have paid their expenses and retained what was left. The situation we find the parties in at this time with respect to their common effort to act through the trustees, is not dissimilar from the illustration above. The common intent has so completely failed as to render it impossible to carry out a distribution of the cash assets in a manner contemplated by the parties and intended by the instrument, because the purpose of the parties and the intent of the instrument is that the distribution to be made thereunder shall be one of cash and not a return of the securities in kind.

Therefore, the decree with respect to distribution is reversed and the cause remanded to the trial court for an accounting and further proceedings in accord-

ance with the views hereinabove expressed. In all other respects, the decree is affirmed.

*Affirmed in part, reversed in part, and remanded with directions.*